UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SCENTER PICKNEY                           CIVIL ACTION NO. 6:16-cv-00211

VERSUS                                    JUDGE JAMES

STRATEGIC RESTAURANTS                     MAGISTRATE JUDGE HANNA
ACQUISITION COMPANY LLC,
ET AL.

## REPORT AND RECOMMENDATION

Currently pending is the defendants' motion to compel arbitration, to stay proceedings, and for an award of attorneys' fees. (Rec. Doc. 11). The motion was referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. (Rec. Doc. 18). The motion is opposed, and oral argument was heard on January 24, 2107. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be granted in part and denied in part.

## BACKGROUND

This is an employment discrimination lawsuit. In her complaint, the plaintiff alleged that she is a 53-year-old African-American woman who began working for defendant Strategic Restaurants Acquisition Company LLC ("SRAC"), a Burger King franchise operator, and defendant Burger King Corporation on November 28, 1982.

She allegedly earned several promotions over the years, culminating with a district manager position.  In late 2013, she was allegedly demoted to restaurant manager for what she contends were discriminatory reasons.  She filed a complaint with the Louisiana Workforce Commission.  Thereafter, she allegedly noticed further discrimination that she contends led to a hostile work place environment and resulted in the termination of her employment.

The plaintiff alleged that, as a restaurant manager, she was required to ensure that speed of service ("SOS") policies were complied with.  The SOS was monitored by timers that recorded the time of service at the restaurant's drive-thru window.  On August 19, 2013, the plaintiff allegedly reported to defendant Teresa Donich, who is alleged to be an SRAC and Burger King employee in the human resources department, that the timers at her restaurant were not working properly.  When nothing was done to correct the problem, the plaintiff allegedly reported the problem to defendants Damien Arabie and Troy Theriot, who are alleged to be SRAC and Burger King employees and the plaintiff's area director and district manager, respectively.  The plaintiff alleged that Theriot and Arabie attempted to correct the problem with the timers but actually worsened their accuracy.  The plaintiff alleged that she subsequently learned that Theriot was adjusting the timers to ensure that the SOS at the plaintiff's restaurant was inaccurate.  The plaintiff alleged that three

restaurants that were managed by white women did not have the same SOS problem. The plaintiff further claimed that she was belittled and demeaned by Theriot, Donich, and Arabie.  On August 14, 2014, she was allegedly terminated due to SOS violations.  The plaintiff further alleged that, a few days later, Theriot worked on the timers at her restaurant, and witnesses observed that the timers worked properly thereafter.

On November 19, 2015, the plaintiff received a right-to-sue letter from the EEOC, and she filed this complaint on February 15, 2016.  In her complaint, the plaintiff sued SRAC, Burger King, Donich, Arabie, and Theriot.  She alleged racial discrimination under Title VII of the Civil Rights Act of 1964, violation of the Age Discrimination in Employment Act ("ADEA"), reprisal for engaging in protected activities, and a hostile and abusive work environment.  In her complaint, the plaintiff alleged that she sustained damages due to extreme emotional anxiety, humiliation, embarrassment, loss of wages, loss of consortium, and loss of future earning capacity. She seeks to recover a retroactive promotion to District Manager with all attendant back pay, benefits, and other emoluments of employment; compensatory damages; punitive damages; and attorneys' fees and costs.

## CONTENTIONS OF THE PARTIES

The defendants responded to the plaintiff's complaint with the instant motion. They contend that the plaintiff signed a "statement of arbitration policy and agreement to arbitrate" in 2005, which requires that the claims asserted in her complaint must be resolved by means of arbitration rather than through litigation of this lawsuit.  In response, the plaintiff argues that the arbitration agreement should not be enforced because it is adhesionary.

## LAW AND ANALYSIS

### A.    THE PARTIES' AGREEMENT

It is an undisputed fact that the plaintiff signed a document titled "Strategic Restaurants Acquisition Corp. Statement of Arbitration Policy and Agreement to Arbitrate" on August 7, 2005.  The agreement is two pages long and is in a uniform font size, which the defendants' counsel represented at the hearing to be 11 point. Above the plaintiff's printed name and signature, in bold print, is a paragraph reading as follows:  "I have read this Statement of Arbitration and Agreement to Arbitrate carefully and I understand and agree to its terms.  I have been hereby advised that I may consult with an attorney and to ask questions about its meaning, and I have had a full and fair opportunity to do so."

The agreement refers to "the Company," but does not identify that entity in the body of the document.  It is assumed that the term "the Company," as used in the agreement refers to Strategic Restaurants Acquisition Corp., since that name is found in the title of the document.

The agreement was also signed by a person represented to be "President and CEO."  It is assumed that this person was the president, CEO, and authorized representative of Strategic Restaurants Acquisition Corp.  In 2007, Strategic Restaurants Acquisition Corp. converted its business format to that of a Delaware limited liability company and changed its name to Strategic Restaurants Acquisition Company, LLC ("SRAC"). (Rec. Doc. 11-4 at 2).  SRAC is the defendant in this lawsuit.  The agreement does not contain a provision indicating that the terms and provisions of the agreement are binding upon the successors or assigns of the parties to the agreement.  However, the plaintiff did not raise an argument related to these facts, and this issue will not be considered further in this report and recommendation.

The arbitration agreement states that in "any disputes between the Company and its employees concerning any of the terms, conditions[,] or benefits of employment, including disputes arising from termination of the employment relationship, arbitration shall be the exclusive remedy for any such disputes."[1]

---

[1]         Rec. Doc. 11-3 at 1.

Therefore, the court is called upon to determine whether this litigation should be stayed pending arbitration of the plaintiff's claims.

## B.   THE APPLICABLE STANDARD

Arbitration is favored under Louisiana law[2] and also under federal law.[3]  In fact, there is a strong presumption in favor of arbitration, and the burden is on the party challenging the arbitration agreement to show that it is invalid.[4]

The agreement at issue in this case does not expressly state that it is governed by the Federal Arbitration Act ("FAA").  However, Section 2 of the FAA provides that a written agreement to arbitrate related to a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,"[5] and the parties do not dispute that the contract is governed by the FAA.  Therefore, this Court finds that the FAA is applicable to the agreement at issue.  The FAA requires the enforcement of arbitration

---

[2]      *Aguillard v. Auction Management Corp.*, 908 So.2d 1, 7 (La. 06/29/2005).

[3]      *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 56 (1995); *Gregson v. Creative Artists Agency, L.L.C*., 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983)).

[4]      *Carter v. Countrywide Credit Indus., Inc*., 362 F.3d 294, 297 (5th Cir. 2004).

[5]      9 U.S.C. § 2.

agreements through the issuance of an order directing the parties to engage in arbitration and staying the litigation of disputes that are referable to arbitration.[6]

The Fifth Circuit developed a two-prong inquiry for deciding whether parties should be compelled to arbitrate their disputes.[7]  The first prong requires a court to determine whether the parties agreed to arbitrate.[8]  Two factors are considered in making this determination:  (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement.[9]  In determining whether there is a valid arbitration agreement between the parties, courts apply state contract law.[10]  In determining whether a question falls within the scope of an arbitration agreement, courts apply the federal policy favoring arbitration.[11]  Once a court finds that the parties agreed to arbitrate,

--------

[6]      9 U.S.C. §§ 3–4; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 389 n. 1 (5th Cir. 2006) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 22).

[7]      *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).

[8]      *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d at 445.

[9]      *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d at 445.

[10]      *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. ,2004); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[11]      *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008); *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

it must move to the second prong of the analysis and consider whether any federal statute or policy renders the claim nonarbitrable.[12]

## C.   DOES AN ARBITRATION AGREEMENT EXIST?

In this case, the plaintiff argues that no valid arbitration agreement exists because the agreement signed by the plaintiff is adhesionary. The Louisiana Supreme Court has defined a contract of adhesion as "a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms."[13] In other words, a contract is adhesionary "when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent."[14] The plaintiff argues that the arbitration agreement she signed is adhesionary because (1) the title was confusing about who was required to arbitrate disputes, (2) the font is small, (3) she was in a weak bargaining position, (4) she was not able to negotiate the terms of the agreement, resulting in its unduly harsh contract language; and (5) the

---

[12]     *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

[13]     *Aguillard v. Auction Management Corp.*, 908 So.2d at 8-9.

[14]     *Aguillard v. Auction Management Corp.*, 908 So.2d at 10-11.

agreement required arbitration of employment based disputes but simultaneously permitted the plaintiff to take her dispute to the EEOC.

After reviewing each of the plaintiff's concerns, this Court finds that the contract is not adhesionary and that there is a valid and binding agreement to arbitrate.

The plaintiff complains that the title of the agreement mentions only SRAC and does not mention SRAC's employees, suggesting that the agreement's title requires the agreement to be interpreted as requiring SRAC to arbitrate disputes with its employees but not requiring the same of its employees.  But a reading of the entire document makes it clear that this was not the intent of the agreement.  The agreement clearly requires both SRAC and its employees to arbitrate any employment-related disputes, stating that arbitration is required for the "resolution of any disputes between the Company and its employees. . . ."[15]  "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him."[16]  Not only does this principle apply to the plaintiff, but she also acknowledged, by signing the agreement, that she was advised

---

[15]      Rec. Doc. 11-3 at 3.

[16]      *Aguillard v. Auction Management Corp.*, 908 So.2d at 13.

to seek legal advice before signing the agreement and was given an opportunity to do so.  Therefore, she had the ability to investigate any ambiguities or lack of clarity in the agreement before signing the agreement and was encouraged to do so. Accordingly, the agreement is not adhesionary because only SRAC is mentioned in the document's title.

The plaintiff argues that the agreement is adhesionary because the font size used in printing the document is small.  At the hearing, the defendants' counsel represented that a uniform 11 point font was used.  However, there is no indication that the font is so small as to make the document illegible, there is no indication that the arbitration agreement was in a font smaller than that used in any other documents that might have been presented to the plaintiff along with the arbitration agreement, and there is no indication that the font size was used in an attempt to hide the arbitration provision.  Furthermore, the Louisiana Supreme Court has held that a document printed in smaller nine-point font was not adhesionary.[17]  Accordingly, this Court finds that the arbitration agreement is not adhesionary due to the small font size used in printing it.

The plaintiff contends that she was in a much weaker position that SRAC, which resulted in a lack of mutuality in the obligations set forth in the arbitration

---

[17]     *Aguillard v. Auction Management Corp.*, 908 So.2d at 20-21.

-10-

agreement.  But the terms of the arbitration agreement require both the employer and the employee to forego litigation and arbitrate their disputes, making the arbitration obligation a mutual one.  Further, there is no evidence that the plaintiff signed the document under duress or that she was totally lacking in power.  "[T]he plaintiff had the option of not signing the agreement and finding work elsewhere if [she] did not wish to be bound to arbitration."[18]  The power of an employee to quit her job rather than sign an agreement requiring that she arbitrate employment disputes is an important one.  In this case, the plaintiff could have exercised that power.  This Court consequently finds that the plaintiff's comparatively weak position did not result in the agreement being adhesionary.

The plaintiff next argues that the agreement is adhesionary because she was not able to negotiate the terms of the agreement and this resulted in unduly harsh terms and provisions.  As noted above, however, the arbitration agreement severely limited both the plaintiff's and the defendants' right to litigate their disputes.  Accordingly, this Court finds that the plaintiff's inability to participate in the drafting of the arbitration agreement did not render the agreement adhesionary or result in terms or

---

[18]      *Aguillard v. Auction Management Corp.*, 908 So.2d at 15 (citing *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*, 2003-0358 (La. App. 4 Cir. 04/10/03), 847 So.2d 617, 622).

provisions that negatively impacted the plaintiff without having the same effect on the defendants.

Finally, the plaintiff argues that the arbitration agreement is adhesionary because it permits an employee to take her grievances to the EEOC but then deprives the employee of her right to litigate any claim for which the EEOC might have recognized her right to sue. But the assertion of an EEOC charge and the filing of a lawsuit based on the conduct complaint about in the EEOC charge are not equivalent. The function of the EEOC charge is to place the EEOC on notice that the employee believes the employer might have violated the law.[19] When the EEOC acts on information gathered as the result of an employee filing a charge, the EEOC acts to vindicate the public interest in preventing employment discrimination.[20] Therefore, an agreement by an employer and employee to deny the EEOC the information it needs would be void as against public policy.[21] In other words, an employer cannot contractually deprive an employee of her right to file an EEOC charge.

Furthermore, the arbitration clause does not prevent an employee from effectively vindicating his or her statutory rights. An arbitration agreement is a

---

[19]    *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1089 (5th Cir. 1987).

[20]    *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d at 1090.

[21]    *E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d at 1090.

-12-

"specialized kind of forum-selection clause."[22]   By agreeing to arbitrate a particular cause of action, the parties to the agreement do not forgo any substantive rights but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum.[23]  Thus, the agreement to arbitrate does not operate as a prospective waiver of statutory rights.

The arbitration agreement at issue in this lawsuit preserves the employee's right to file an EEOC charge, and it also permits the employee to seek resolution of the dispute underlying her EEOC charge – just by means of arbitration rather than by means of litigation.   This Court finds that the agreement's preservation of an employee's right to make an EEOC claim while requiring that arbitration rather than litigation be used to resolve the employee's employment-based complaints does not render the agreement adhesionary.

In summary, this Court finds that the plaintiff's arguments that the arbitration agreement is adhesionary lack merit.  After careful consideration of the terms and provisions of the arbitration agreement, this Court finds that there is nothing in the relative strength of the parties' positions, the content of the agreement, or the way the document was crafted that calls into question the validity of the plaintiff's consent to

---

[22]     *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

[23]     *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31-32 (1991).

the terms of the agreement, as indicated by her signature on the document. Consequently, this Court finds that a valid arbitration agreement was entered into by SRAC and the plaintiff.

**D.    DO THE PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT?**

Having found that a valid agreement to arbitrate exists between the parties, this Court must now determine whether the dispute in question lies within the scope of the arbitration agreement.  When determining the scope of an arbitration clause, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted,"[24] and in light of the federal policy favoring arbitration, courts ordinarily resolve any doubts concerning the scope of an arbitration clause in favor of arbitration.[25]

In this case, the arbitration agreement states that in "any disputes between the Company and its employees concerning any of the terms, conditions[,] or benefits of employment, including disputes arising from termination of the employment

---

[24]    *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004).

[25]    *Personal Sec. & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002); *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. at 66.

relationship, arbitration shall be the exclusive remedy for any such disputes."[26]  The

factual allegations set forth in the plaintiff's complaint have to do with her work

environment, her relationship with her supervisors, the requirements that she and her

restaurant comply with certain productivity standards, her demotion from district

manager to restaurant manager, and the termination of her employment.   Quite

clearly, her claims relate to the terms, conditions, or benefits of employment and

present a dispute arising from termination of the employment relationship between

she and SRAC.   Accordingly, this Court concludes that the claims set forth in the

plaintiff's complaint fall within the scope of the arbitration agreement.

### E.   DOES A STATUTE OR POLICY RENDER THE PLAINTIFF'S CLAIMS NONARBITRABLE?

The next step in the applicable analysis is whether any statute or policy renders

the claim nonarbitrable.   The parties have not identified any such obstacle to

arbitration in this case, and this Court is aware of none.  Indeed, the jurisprudence is

replete with examples of employment-based claims being referred to arbitration in

---

[26]       Rec. Doc. 11-3 at 1.

accordance with the parties' arbitration agreements.[27]  Accordingly, this Court finds

that there is no statute or policy that renders the plaintiff's claims nonarbitrable.

## F.   SHOULD ATTORNEYS' FEES BE AWARDED?

In the pending motion, the defendants seek an award of attorneys' fees, arguing

that such an award is mandated by the terms and provisions of the arbitration

agreement.  The agreement states that, should either party to the contract file a lawsuit

rather than initiating arbitration in order to resolve a claim falling within the scope

of the arbitration agreement, "the court shall order the matter to arbitration and shall

award the prevailing party. . . its reasonable costs and attorney's fees. . . ."[28]

The defendants correctly point out that, under Louisiana law, a contract is the

law between the parties.[29]  But the court was not a party to the arbitration agreement

at issue in this lawsuit, and the agreement's provisions cannot bind or be enforced

against the Court.  Perhaps more important, in executing the arbitration agreement,

the plaintiff did not agree to pay any fees or costs incurred by SRAC.  Accordingly,

---

[27]     See, e.g., *Freeman v. Austin Maintenance and Construction, Inc.*, No. 16-8588, 2016 WL 7229289 (E.D. La. Dec. 14, 2016); *Hillware v. New Orleans Saints*, No. 14-2964 c/w 15-1025, 2016 WL 3952039 (E.D. La. July 22, 2016); *Henry v. New Orleans Louisiana Saints L.L.C.*, No. 15-5971, 2016 WL 2901775 (E.D. La. May 18, 2016); *Broussard v. Nalco Co*, No. 15-02856, 2016 WL 1371081 (W.D. La. Mar. 10, 2016); *Ell v. Turner Industries Group, LLC*, No. 15-230-JJB-RLB, 2016 WL 866342, at *7 (M.D. La. Mar. 3, 2016).

[28]     Rec. Doc. 11-1 at 12.

[29]     Louisiana Civil Code Article 1983.

-16-

this Court finds that the contract provision relied upon by SRAC for the requested award of attorneys' fees and costs is not enforceable.

## CONCLUSION

For the reasons stated above, this Court recommends that the defendants' motion to compel arbitration and stay this lawsuit pending arbitration be GRANTED IN PART AND DENIED IN PART. This Court recommends that this lawsuit be stayed and that the plaintiff, Scenter Pickney, be ordered to submit the claims asserted in this lawsuit, all of which arose from her employment with defendant Strategic Restaurants Acquisition Company, LLC, to arbitration in accordance with the arbitration agreement. To the extent that the motion seeks an award of attorneys' fees, however, this Court recommends that the motion be denied because the arbitration agreement is not binding on the court.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

-17-

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 6th day of February 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE